Jaehyun Oh, Esq. (5668512)
Alan L. Fuchsberg, Esq. (1755966)
**THE JACOB D. FUCHSBERG LAW FIRM, LLP**
3 Park Avenue, 37th Floor
New York, New York 10016
j.oh@fuchsberg.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JULIAN M. BOSCH,<br><br>                                              Plaintiff,<br><br>-against-<br><br>SPEEDWAY, LLC,<br><br>                                              Defendant. | Civil Action No.:<br><br>ECF Case<br><br>**COMPLAINT AND<br>JURY DEMAND** |

Plaintiff JULIAN M. BOSCH, by and through his attorneys, The Jacob D. Fuchsberg Law Firm, LLP, for his Complaint against Defendant SPEEDWAY, LLC as above captioned, alleges as follows upon information and belief:

**PRELIMINARY STATEMENT**

1. On May 15, 2022, Plaintiff JULIAN M. BOSCH ("Mr. Bosch") at 31 years of age sustained catastrophic burn injuries on about 57% of his total body surface area. Mr. Bosch sustained this gruesome injury at a gas station located at 1885 Atlantic Avenue, Brooklyn, New York 11233 ("the subject gas station") when a gas tank exploded, as a direct and proximate result of Defendant's wrongful acts and omissions.

2. At all relevant times, said gas station was owned, operated, managed, maintained, and controlled by Defendant SPEEDWAY, LLC, ("Speedway") and was commonly known as a "Speedway" gas station.

1

3. At the time of the incident, Mr. Bosch was working at the subject gas station as an agent, servant, employee, or contractor of Eastern Environmental Solutions, Inc., pulling and removing underground storage tanks as part of his work duties.

4. At all relevant times, Defendant Speedway owned, operated, managed, maintained, controlled, rented, and was the lessee of the aforesaid underground storage tank system as well as subject gas station, and had a duty to properly use, handle, operate, clean, empty, and remove the aforesaid underground storage tanks so that they did not pose risks of gas explosion to removal workers on site including Mr. Bosch.

5. Defendant Speedway failed to implement the necessary protective measures to properly protect Mr. Bosch and other workers from the ultra-hazardous, hazardous, and dangerous risks of gas explosion. Defendant failed to provide proper and adequate safety operation, preparation, warnings, instructions, oversight, and supervision regarding the handling of underground storage tank system to Mr. Bosch and other workers to prevent or avoid the ultra-hazardous, hazardous, and dangerous risks of gas explosion.

6. Defendant also failed to follow binding and mandatory safety regulations that govern the operation of its gas stations, including but not limited to 29 CFR 1910.120; 40 CFR 280 Subpart G; 6 NYCRR 613-2.6.[1] These regulations require that the underground storage tank system is emptied and cleaned of any liquids or accumulated sludge and, if left in the ground, is filled with a harmless, chemically inactive solid. Upon information and belief, had the Defendant properly implemented safety protocol consistent with these regulations, the gas explosion on May 15, 2022 that gravely injured Mr. Bosch would not have occurred.

---

[1] *See also* https://www.epa.gov/ust/resources-ust-owners-and-operators wherein United States Environmental Protection Agency ("EPA") affirmatively cites relevant regulations.

7. Defendant failed to provide proper oversight of the subject gas station to ensure that the removal work was performed safely, given the hazardous nature of the work being performed. On the day of the incident, and prior thereto, there was no properly licensed, trained, and experienced agent, servant, or employee from Defendant Speedway present on the site as there should have been for the process of safely removing gas tank fumes prior to any entry into, and excision or excavation of, the said gas tank.

8. Defendant, by its agents, servants, and employees, improperly used, handled, monitored, condoned, inspected, supervised, prepared, operated, cleaned, emptied, and removed the underground gas storage tank system and pipes at the subject gas station, thereby subjecting Mr. Bosch to the ultra-hazardous, hazardous, and dangerous risks of gas explosion.

9. The aforesaid underground storage tank system was thereby negligently, carelessly, and recklessly used, handled, monitored, condoned, inspected, supervised, prepared, operated, cleaned, emptied, and removed by Defendant, and/or its agents, servants, and employees, such that they presented an explosion risk, danger, and hazard to those individuals positioned at, passing by, and/or in vicinity of the gas tanks, including Plaintiff Mr. Bosch.

10. Therefore, Plaintiff hereby seeks redress for Defendant's negligent and otherwise unlawful conduct, which caused Plaintiff to suffer catastrophic injuries, pain and suffering, emotional distress, loss of enjoyment of life, and other permanent injuries, losses, and damages, both general and special.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332 based upon the diversity of citizenship of the parties. Plaintiff is a resident, citizen, and domiciliary of the State of New York. Defendant is a resident, citizen, and domiciliary of the States of Ohio

and Delaware, as a Delaware Limited Liability Company with its principal and actual places of business in the State of Ohio. As such, there is complete diversity within the meaning of 28 U.S.C. § 1332.

12. Amount in controversy far exceeds the sum or value specified in 28 U.S.C. § 1332, exclusive of interest and costs.

13. This Court has personal jurisdiction over the Defendant because the alleged incidents occurred within the confines of the State of New York; particularly in the municipality of Brooklyn, County of Kings.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

15. At all relevant times, Plaintiff Mr. Bosch resided and resides in County of Suffolk, State of New York.

16. At all relevant times, Plaintiff Mr. Bosch was and is a resident, citizen, and domiciliary of the State of New York.

17. At all relevant times, Defendant Speedway was and is a foreign business corporation duly organized, existing, and incorporated pursuant to the laws of the State of Delaware.

18. At all relevant times, Defendant Speedway was and is a foreign business corporation with its principal executive offices in the State of Ohio, located at 500 Speedway Drive, Enon, Ohio 45323.

19. At all relevant times, Defendant Speedway was a foreign business corporation that transacted business in the State of New York.

20. At all relevant times, Defendant Speedway was a foreign business corporation that conducted business operations in the State of New York.

21. At all relevant times, Defendant Speedway was a foreign business corporation that engaged in interstate commerce in the State of New York.

22. At all relevant times, Defendant Speedway was a foreign business corporation that sold goods, products, and services in the State of New York.

## JURY DEMAND

23. Plaintiff hereby demands a trial by jury on all of his claims in this action.

## STATEMENT OF FACTS

24. On May 15, 2022, from around 8am onward, Mr. Bosch was lawfully on the premises owned and operated by the Defendant Speedway, specifically at a gas station located at 1885 Atlantic Avenue, Brooklyn, New York 11233.

25. At relevant times, Mr. Bosch was an employee of Eastern Environmental Solutions, Inc. His job duties included being sent to gas storage sites to remove underground tanks or to cut the pipes connecting to those underground tanks.

26. Mr. Bosch had just been assigned to the aforesaid Speedway gas station as his jobsite on or around May 12, 2022—three days before the subject incident. His job duties were to abandon, cut and clean, and excavate three underground storage tanks ("UST") from the station site.

27. Defendant Speedway, as the owner and operator of the subject premises and the UST system, had a duty to ensure the safety of the premises including safety of the removal workers on site including Mr. Bosch, in their usage, handling, operation, cleaning, emptying,

5

removal, abandonment, cutting, and excavation of the underground gas tanks, so that neither the workers nor anyone else would be subject to undue risks of gas explosion.

28. Defendant Speedway failed to provide an adequately safe work environment for the workers at this hazardous site so as to prevent or avoid the risk of gas explosion.

29. Defendant Speedway failed to inspect and ensure that the gas tanks could be safely opened to escape and ventilate away explosive fumes prior to the removal or tank pull process, which Mr. Bosch was performing on the day of the incident.

30. Defendant Speedway failed to confirm whether there was an unsafe level of gas remaining in the tanks, thereby subjecting workers on site including Mr. Bosch to a grave risk of explosion during the UST removal process.

31. Defendant Speedway did not provide proper training, oversight, supervision, monitoring, warning, or instructions to workers at the site including Mr. Bosch to prevent or avoid the risk of gas explosion.

32. Defendant Speedway did not provide proper preparatory oversight through its own agents, servants, and employees who should have been placed on site prior to and during the UST removal to ensure safety of workers on site including but not limited to Mr. Bosch.

33. Defendant Speedway did not provide workers, contractors, and subcontractors on site including Mr. Bosch with adequate protection, preparatory protective measures, or protective equipment to prevent or avoid the risk of gas explosion in the course of their work activities, responsibilities, and duties.

34. Defendant Speedway also did not properly and adequately provide to workers, contractors, and subcontractors on site including Mr. Bosch instructions for the safe removal and handling of underground storage tank system to prevent or avoid unreasonable risks of harm.

35. Defendant Speedway thereby subjected workers, contractors, and subcontractors on site including Mr. Bosch, as well as the public generally, to intolerable hazards, dangers, and risks to human health, safety and welfare, including the risks of catastrophic gas explosion.

36. On May 12, 2022 and on May 13, 2022, Mr. Bosch and his co-workers had removed one underground gas tank per day from the subject gas station site.

37. Mr. Bosch's first day on the jobsite—May 12, 2022—was the only day that an agent, servant, or employee of Defendant Speedway was present at the job site.

38. The Speedway agent(s) who were present on May 12, 2022, whose identity is unknown at this time, confirmed that Mr. Bosch and his co-workers were to perform tank pull on the three UST's on site. However, these agents failed to ensure that the tanks were safe for the removal job that was about to be performed—specifically, that the caps on the tanks could be taken off and gas fumes eliminated prior to the procedure of opening the tanks to clean them of sludge, as preparatory preconditions to the tank's removal. Upon information and belief, cap removal is a critical preparatory step in ensuring safety for the removal process, as it allows the workers to measure the gas level and to force clean air through the tank to eliminate a dangerous collection of gas vapors prior to activities of cleaning and tank pull.

39. In the morning of May 15, 2022, Mr. Bosch arrived at the job site to remove the third tank ("the subject tank") pursuant to his job duties.

40. There was no way provided to Mr. Bosch by Defendant Speedway to check the inside of the tank to eliminate the possibility that there was an unsafe level of gas or vapor remaining. It was Defendant Speedway's duty to ensure prior to and during this activity that the gas level was safe for the workers' removal duties.

41. Upon information and belief, on the day of the incident, unbeknownst to Mr. Bosch, the gas tank at issue had an unsafe level of gas or vapor in it because of the failure of Defendant Speedway to properly clean or empty it prior to the removal work. It was Defendant Speedway's duty to take the gas out from the underground tanks prior to the removal job by Mr. Bosch and his co-workers.

42. It was Defendant Speedway who determined what the safe levels of gas are for the UST's, which tanks to be excavated, and whether the gas was adequately cleaned out from the tanks prior to the excavation and removal. It was due to Defendant Speedway's failure to properly determine these facts that Mr. Bosch was instructed to pull a tank that had an unsafe level of gas in it.

43. Upon information and belief, Defendant Speedway previously told Mr. Bosch's employer, Eastern Environmental Solutions, Inc., that the gas was completely pumped out from all the tanks and that the level of vapor was such that they could be safely removed. It was based on this erroneous representation by Speedway that Mr. Bosch and his co-workers performed the tank pull on the day of the incident.

44. The only way for Mr. Bosch to check the inside of the tank was to remove the cap near the top of the tank. However, on the day of the incident, Mr. Bosch noticed that he could not get the cap open for the subject tank. Upon information and belief, it was Defendant Speedway's duty to ensure that the cap could be opened and in fact be opened so that the workers can air out the gas tank of vapors prior to any further entry, cleaning, dismantling, or removal activities to ensure safety in these activities. It was due to Defendant Speedway's wrongful acts and omissions that Mr. Bosch could not remove the cap from the subject tank.

45. There was no properly experienced, trained, licensed, and supervising agent, servant, or employee of Defendant Speedway on site for Mr. Bosch or other workers to discuss the fact that he could not open or remove the cap. Defendant Speedway negligently failed to provide training, oversight, supervision, monitoring, warning, or instructions regarding how to handle such occurrence.

46. Mr. Bosch proceeded to the next step in the removal process, which is to take the bolts off to get into the manway. The manway is a channel through which Mr. Bosch was to enter the tank to clean away any sludge prior to its excavation. There were several bolts that needed to be taken off to get into the manway.

47. As Mr. Bosch removed one of the last few bolts, he felt an absolute intense heat emanating from the tank, leading to an explosion. Due to the force of the explosion, Mr. Bosch's body was popped out of the tank hold, at which point he realized that he was on fire.

48. An ambulance was dispatched and arrived at the scene at around 1:30pm, after which Mr. Bosch was emergently taken to New York Presbyterian Hospital-Weill Cornell Medical Center's Intensive Care Unit for medical treatment. Mr. Bosch remains hospitalized at Weill Cornell to the present date, receiving intensive care.

49. Had Defendant Speedway abided by the safety regulations governing petroleum bulk storage including UST, the gas explosion that maimed Mr. Bosch would not have occurred.

50. For instance, pursuant to 6 NYCRR 613-2.6, Defendant Speedway was required to empty and clean the entire UST system by removing all sludge, debris, and liquids. The amount of residue in the system needed to be measured to determine whether the UST system could truly be considered empty. The fact that the cap on the subject tank could not be removed shows that

Defendant Speedway neglected to follow through on safe preparatory activities for these binding requirements.

51. Defendant engaged in operational practices in relation to its use, handling, monitoring, inspection, supervision, preparation, operation, cleaning, emptying, and removal of the underground gas storage tank system in such a way that was not only negligent, grossly negligent, and reckless, but also constituted an ultra-hazardous or abnormally dangerous activity for which they are strictly liable.

52. It was as a direct and proximate result of Defendant's disregard of the excessive risk of harm to Mr. Bosch's health and safety that Mr. Bosch sustained extremely painful and gruesome flame burn injuries on approximately 56.5% of his total body surface area. Upon information and belief, the burn impact was sustained for over 10 seconds and disfigured Mr. Bosch's anterior torso, right flank and bank, bilateral axilla, bilateral upper and lower extremities, and perineum. Upon information and belief, these burn injuries will be permanent despite continued palliative treatment.

53. Since his transfer to Weill Cornell on May 15, 2022, Mr. Bosch has remained hospitalized there. Shock from the explosion was so severe that he was immediately intubated, sedated, and put on maximal ventilator support when he was taken to Weill Cornell. Despite such treatment, Mr. Bosch developed multiorgan failure, progressive hypoxemic respiratory failure, profound hypotensive episode despite resuscitation efforts, and urinary incontinence requiring catheterization. These injuries were a direct and proximate result of the explosion and the trauma it inflicted on Mr. Bosch's body.

54. At 31 years of age, Mr. Bosch remains at a high probability of life-threatening deterioration given his severe and extensive burn injuries. Due to the multiorgan failure and

systemic shock to the body, Mr. Bosch also requires continuous renal replacement therapy (*i.e.*, hemodialysis). He also underwent escharotomies to bilateral lower extremities to incise through full-thickness circumferential burns, as well as skin graft surgeries to abdomen, arms, and legs; and is expected to require future surgical interventions as well.

55. Mr. Bosch has suffered, and will continue to suffer, severe pain and suffering, disfigurement, bodily injury and risk of illness, emotional and psychological injuries, loss of enjoyment of life, loss of income, and costs of medical care.

56. As a result of the foregoing, Plaintiff Julian M. Bosch seeks redress for Defendant's negligent and otherwise unlawful conduct, which caused Plaintiff to suffer catastrophic injuries, conscious pain and suffering, decreased life expectancy, agony, emotional distress, past and future medical expenses, past and future loss of income, past and future disabilities, loss of enjoyment of life, limitations in activities of daily living, and fear of impending death, among other injuries, losses, and damages.

**FIRST CAUSE OF ACTION**
**(Negligence)**

57. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

58. At all relevant times, Defendant Speedway owed duties to all workers, contractors, subcontractors, visitors, occupants, future occupants and other people at and within the vicinity of the site, including Mr. Bosch, to maintain its premises and facilities in a reasonably safe condition, to correct dangerous conditions of which the Defendant either knew or should have known by the use of reasonable care, and to warn the Plaintiff of any dangerous conditions of which the Defendant either knew or should have known by the use of reasonable care.

59. At all relevant times, Defendant Speedway owed duties to all workers, contractors, subcontractors, visitors, occupants, future occupants and other people at and within the vicinity of the site, including Mr. Bosch, to use reasonable care to operate, control, direct, manage, supervise, monitor, oversee, inspect, supervise, prepare, conduct, and regulate the gas station's activities, business, performance, services, functions, facilities, equipment, supplies, assets, and property in a safe manner to protect the health, safety, and welfare of those persons at, on, and in the vicinity of the site.

60. At all relevant times, Defendant Speedway owed duties to all workers, contractors, subcontractors, visitors, occupants, future occupants and other people at and within the vicinity of the site, including Mr. Bosch, to use reasonable care in providing a safe place to work at the site and in providing safe conditions within the premises.

61. At all relevant times, Defendant Speedway owed duties to all workers, contractors, subcontractors, visitors, occupants, future occupants and other people at and within the vicinity of the site, including Mr. Bosch, to use reasonable care in properly and adequately protecting workers from the inherent hazards, dangers, and risks of gas explosion to human health, safety, and welfare.

62. At all relevant times, Defendant Speedway owed duties to all workers, contractors, subcontractors, visitors, occupants, future occupants and other people at and within the vicinity of the site, including Mr. Bosch, to use reasonable care in properly and adequately warning, instructing, educating, and informing workers about the inherent hazards, dangers, and risks of gas explosion to human health, safety, and welfare.

63. At all relevant times, Defendant Speedway owed duties to all workers, contractors, subcontractors, visitors, occupants, future occupants and other people at and within the vicinity of the site, including Mr. Bosch, to use reasonable care in providing proper and adequate protective

measures to prevent or avoid exposures to the hazards, dangers and risks to human health, safety and welfare by gas explosion.

64. At all relevant times, Defendant Speedway owed duties to all workers, contractors, subcontractors, visitors, occupants, future occupants and other people at and within the vicinity of the site, including Mr. Bosch, to use reasonable care in providing for the safe use, handling, monitoring, inspection, supervision, preparation, operation, cleaning, emptying, and removal of its UST system.

65. At all relevant times, Defendant Speedway owed duties to all workers, contractors, subcontractors, visitors, occupants, future occupants and other people at and within the vicinity of the site, including Mr. Bosch, to use reasonable care in protecting, overseeing, monitoring, and supervising them to prevent an undue risk of catastrophic injury.

66. As set forth herein, Defendant Speedway breached and violated each of the foregoing duties owed to Mr. Bosch, thereby exposing him to the risk of serious and foreseeable bodily harm.

67. As set forth herein, Defendant Speedway was careless, reckless, negligent, and grossly negligent in its ownership, operation, maintenance, control, use, handling, monitoring, inspection, supervision, preparation, operation, cleaning, emptying, and removal of its gas storage tank system.

68. Defendant did not possess the necessary skills to maintain, keep, use, handle, operate, clean, empty, and remove its gas storage tank system in a reasonably safe and suitable condition.

69. Defendant neglected to apply the skills it did have.

70. Defendant did not use reasonable care in applying the skills it had.

71. Defendant was negligent and violated its duty of care owed to the Plaintiff in other ways that are documented in relevant records (both known and unknown) and in ways of which Plaintiff is not yet aware.

72. Defendant, through its agents, servants, and employees, was aware of facts that gave rise to an unreasonable risk that Mr. Bosch would be irreparably injured. It was foreseeable to the Defendant, based on facts known to its agents, servants, and employees, that Mr. Bosch was at risk of imminent serious harm. Yet, Defendant failed and/or refused to avoid or prevent Mr. Bosch's catastrophic injuries while working at its premises.

73. Mr. Bosch's injuries were inflicted solely by the foregoing acts and omissions of the Defendant, and through no fault or want of care or negligence or contributory negligence on the part of Mr. Bosch.

74. This action falls within one or more of the exceptions set forth in CPLR § 1602.

75. Defendant is jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that Defendant owed the Plaintiff a non-delegable duty of care.

76. Defendant is jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that Defendant acted with reckless disregard for the safety of others, including that of the Plaintiff.

77. Defendant is jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR § 1601, by reason of the fact that Defendant is vicariously liable for the negligent acts and omissions of its agents, servants, and employees.

78. Defendant's conduct constitutes the tort of negligence under the laws of the State of New York.

79. As a direct and proximate result of Defendant's negligence, Plaintiff Mr. Bosch is entitled to compensatory and punitive damages for his non-economic and economic injuries.

80. By reason of the above, Plaintiff Mr. Bosch brings this action to recover damages in an amount to be determined at trial.

81. The egregious circumstances that surround this gruesome incident and Defendant's flagrant violations of binding regulations justify an award of punitive damages.

82. As a result, Plaintiff seeks punitive damages to be awarded as to this Cause of Action in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
**(Negligence *Per Se*)**

83. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

84. At all relevant times, Defendant Speedway was careless, reckless, negligent, and grossly negligent in its ownership, operation, maintenance, control, use, handling, monitoring, inspection, supervision, preparation, operation, cleaning, emptying, and removal of its gas storage tank system, in violation of numerous safety laws and regulations, including those promulgated and/or enforced by the Occupational Safety and Health Administration. *See* 29 CFR 1910.120; *see also* 40 CFR 280 Subpart G; 6 NYCRR 613-2.

85. As Defendant's conduct that caused injuries to Mr. Bosch was in violation of safety laws and regulations, Defendant's conduct constitutes the tort of negligence *per se* under the laws of the State of New York.

86. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff Mr. Bosch is entitled to compensatory and punitive damages for his non-economic and economic injuries.

87. By reason of the above, Plaintiff Mr. Bosch brings this action to recover damages in an amount to be determined at trial.

88. The egregious circumstances that surround this gruesome incident and Defendant's flagrant violations of binding regulations justify an award of punitive damages.

89. As a result, Plaintiff seeks punitive damages to be awarded as to this Cause of Action in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Strict Liability for Abnormally Dangerous or Ultra-Hazardous Activities)

90. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

91. It is well known by agencies including but not limited to the EPA that the management, handling, cleaning, and emptying of the underground storage tank system constitute "potentially very hazardous actions [that] need to be carried out carefully by trained professionals who follow standard safety practices."[2] Activities involving UST's, such as tank pull that Mr. Bosch was performing, pose an abnormal danger or extreme hazard, subjecting Defendant Speedway to strict liability for the injuries that result therefrom.

92. At all relevant times, Defendant Speedway engaged in operational practices in relation to its use, handling, monitoring, inspection, supervision, preparation, operation, cleaning, emptying, and removal of its gas storage tank system in such a way that was not only negligent,

---

[2] https://www.epa.gov/ust/resources-ust-owners-and-operators

grossly negligent, and reckless, but also constituted an ultra-hazardous or abnormally dangerous activity for which they are strictly liable.

93. Defendant Speedway's failure to provide proper oversight, supervision, monitoring, warning, or instructions to workers at the site including Mr. Bosch to prevent or avoid the risk of gas explosion constituted ultra-hazardous or abnormally dangerous activity.

94. The foregoing ultra-hazardous or abnormally dangerous activities of Defendant Speedway caused, created, and resulted in the foreseeable risks of personal injury including from gas explosion to those working at the site, including Mr. Bosch.

95. The foregoing ultra-hazardous or abnormally dangerous activities of Defendant Speedway caused and created high risks of harm that could not otherwise be eliminated without complete closure of the facility.

96. The ultra-hazardous or abnormally dangerous activities of Defendant Speedway were not a matter of common usage.

97. The ultra-hazardous or abnormally dangerous activities of Defendant Speedway presented such a high degree of hazards, dangers, and risks to human health, safety, and welfare that same outweighed its value to the community.

98. Defendant Speedway is strictly liable to Plaintiff Mr. Bosch for any injuries, harm, losses, and damages caused by these ultra-hazardous and abnormally dangerous activities at its gas station.

99. As a direct and proximate result of Defendant's conduct, Plaintiff Mr. Bosch is entitled to compensatory and punitive damages for his non-economic and economic injuries.

100. By reason of the above, Plaintiff Mr. Bosch brings this action to recover damages in an amount to be determined at trial.

101. The egregious circumstances that surround this gruesome incident and Defendant's flagrant violations of binding regulations justify an award of punitive damages.

102. As a result, Plaintiff seeks punitive damages to be awarded as to this Cause of Action in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(Gross Negligence)**

103. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

104. The foregoing conduct of Defendant Speedway pertaining to its operational practices in relation to its use, handling, operation, cleaning, emptying, and removal of the gas storage tank system was grossly negligent, reckless, and/or intentional.

105. The foregoing conduct of Defendant Speedway was undertaken in reckless disregard of the health, safety, and welfare of Mr. Bosch and his co-workers.

106. The foregoing conduct of Defendant Speedway was undertaken with gross indifference to the health, safety, and welfare of Mr. Bosch and his co-workers.

107. The foregoing conduct of Defendant Speedway was undertaken with the knowledge, awareness and/or reason to know that it would present an unreasonable risk of injury, harm, loss and/or death to Mr. Bosch and his co-workers.

108. The foregoing conduct of Defendant Speedway knowingly, willfully, and intentionally created an unreasonable risk of physical harm to Mr. Bosch and his co-workers.

109. As a direct and proximate result of Defendant's conduct, Plaintiff Mr. Bosch is entitled to compensatory and punitive damages for his non-economic and economic injuries.

110. By reason of the above, Plaintiff Mr. Bosch brings this action to recover damages in an amount to be determined at trial.

111. The egregious circumstances that surround this gruesome incident and Defendant's flagrant violations of binding regulations justify an award of punitive damages.

112. As a result, Plaintiff seeks punitive damages to be awarded as to this Cause of Action in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (Negligent Hiring, Retention, and Supervision)

113. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

114. At all relevant times, Defendant Speedway was negligent in its hiring, retention, and supervision of its agents, servants, employees, laborers, and other workers.

115. At all relevant times, Defendant Speedway was negligent in its hiring, retention, and supervision of its agents, servants, employees, laborers, and other workers who were unskilled, not capable, not trained or sufficiently trained, and lacked the knowledge, training, and ability of other workers in the community to properly perform their jobs.

116. Defendant's conduct constitutes the tort of negligence under the laws of the State of New York.

117. As a direct and proximate result of Defendant's negligence, Plaintiff Mr. Bosch is entitled to compensatory and punitive damages for his non-economic and economic injuries.

118. By reason of the above, Plaintiff Mr. Bosch brings this action to recover damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Julian M. Bosch respectfully requests that judgment be entered against Defendant as follows:

a. An award of compensatory damages as to the First through Fifth Causes of Action for personal injuries, conscious pain and suffering, emotional distress, fear of impending death, economic damages, both general and special, and other harm, in an amount to be determined at trial;

b. An award of punitive damages as to the First through Fourth Causes of Action in an amount to be determined at trial;

c. An award of pre- and post-judgment interest as permitted by law, for any and all monetary and/or non-monetary losses;

d. An award of attorneys' fees and costs as permitted by law; together with

e. Such other and further relief at law or in equity as this Court may deem just and proper.

Dated: New York, New York
July 13, 2022

By: /s/ Jaehyun Oh
Jaehyun Oh
Alan L. Fuchsberg
The Jacob D. Fuchsberg Law Firm, LLP
3 Park Avenue, Suite 3700
New York, New York 10016
(212) 869-3500, ext. 245
j.oh@fuchsberg.com

*Attorneys for Plaintiff*